IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| DANA DAVIS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-v-<br><br>EQUIFAX INFORMATION SERVICES, LLC, KROSS, LIEBERMAN & STONE, INC., CREDIT SOLUTIONS CORPORATION and WYNDHAM RESORT DEVELOPMENT CORPORATION, d/b/a WORLDMARK BY WYNDHAM<br><br>Defendants. | Civil Case Number:<br><br>CIVIL ACTION<br><br>COMPLAINT<br>AND<br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. Identity theft is clearly a widespread problem in this country. Over the past decades, identity theft has emerged over the last decade as one of the fastest growing white-collar crimes in the United States.[1] Millions of Americans annually fall victim to this crime, and are required to spend countless hours and untold effort in attempting to undo the resultant harm caused to their credit reports.[2]

2. As a result of this growing problem, Congress amended the Fair Credit Reporting Act in 2003

---

[1] *See, Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505 (4th Cir. 2007).
[2] Victimization surveys conducted by Synovate for the Federal Trade Commission estimate that, between 1998 and 2003, approximately 27.3 million adults discovered they were the victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone. *See,* Graeme R. Newman & Megan M. NcNally, *Identity Theft Literature Review* 14 (2005), http://www.ncjrs.gov/pdffiles1/nij/grants/210459.pdf (citing Synovate, Federal Trade Commission—Identity Theft Survey Report 7, 12 (2003), http://www.ftc.gov/os/2003/09/synovatereport.pdf).

-1-

("FCRA," 15 U.S.C. 1681 *et seq.*) to increase protection for victims of identity theft.[3] These regulations require "consumer reporting agencies" ("CRAs") such as Equifax to block information in a consumer's credit report if that information resulted from identity theft. The CRA must do so within four days of receiving certain documentation of the identity theft. 15 U.S.C. § 1681c–2(a). That documentation includes: proof of the consumer's identity; a copy of "an identity theft report"; identification of what information should be blocked; and the consumer's statement that the disputed information does not relate to any transaction that she made. *Id.* Once a CRA receives the necessary information and places the block, it must inform the "furnisher" of the blocked information. 15 U.S.C. § 1681c–2(b).

3. Dana Davis, the Plaintiff in this case, has been the unfortunate victim of identity theft. Specifically, Equifax has been reporting accounts - on behalf of Kross, Lieberman & Stone, Credit Solutions and Wyndham – on Plaintiff's credit report.

4. Plaintiff has nothing to do with these accounts, which were opened by an identity thief.

5. Rather than working with Mr. Davis to rectify this situation, Equifax refuses to remove these fraudulent accounts from his credit report, despite the Plaintiff providing every single corroborating document required by Equifax. Instead, Equifax has continued to willfully and negligently harm the Plaintiff's credit report by associating these fraudulent accounts with the Plaintiff, thereby severely impacting Plaintiff's life and his ability to obtain credit or a mortgage to buy a home.

6. Plaintiff thus brings this action under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (the "FCRA") alleging that Kross, Lieberman & Stone, Credit Solutions Corporation and Wyndham Resort Development Corporation, d/b/a Worldmark By Wyndham, Inc. have

---

[3] *See*, Pub.L. 108–159 (December 4, 2003)

negligently, recklessly and knowingly falsely reported that Mr. Davis owes them a balance, despite being on actual notice that these accounts were opened by an identity thief, and that these entities failed to correct this information after being advised of the Plaintiff's dispute.

7. Plaintiff further alleges that Equifax Information Solutions, LLC (Equifax) has negligently and recklessly disseminated false information regarding the Plaintiff's credit, namely by continuing to associate Plaintiff with these fraudulent accounts, particularly after the Plaintiff mailed letters to Equifax specifically advising it of its error and submitting extensive supporting documentation.

8. Plaintiff further alleges Equifax failed to follow reasonable procedures to ensure maximum accuracy of credit reports it prepared concerning Plaintiff, and failed to investigate credit report inaccuracies in response to Plaintiff's disputes. Finally, Equifax has failed to follow the most basic requirements of the FCRA, which require this information to be blocked within four days of being provided the necessary documents.

9. Finally, the FCRA makes special treatment for credit items that are the subject of identity theft, requiring the credit reporting agency to block such information within four days of receiving an Identity Theft Report from a victim. Plaintiff alleges that Equifax routinely fails to comply with this requirement, and instead treats such disputes as regular, everyday, disputes under the FCRA. Plaintiff accordingly brings a claim against Equifax on behalf of himself and a putative class of similarly situated individuals, who were all subject to the same illegal treatment.

10. Plaintiff seeks statutory, actual, and punitive damages, along with injunctive and declaratory relief, and attorneys' fees and costs.

## JURISDICTION

11. The Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p. All defendants regularly conduct business within the state of North Carolina, and violated Plaintiff's rights under the FCRA in the state of North Carolina as alleged more fully below.

12. Venue is proper this district under 28 U.S.C. 1391(b) because Plaintiff resides in this district, Defendant conducts business in this district, and communications giving rise to this action occurred in this district.

## PARTIES

13. Plaintiff, Dana Davis ("Plaintiff"), is a resident of Charlotte, North Carolina, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

14. Defendant Equifax is one of the largest credit reporting agencies in the United States, and is engaged in the business of assembling and disseminating credit reports concerning hundreds of millions of consumers. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA, and is regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d)(1) of the FCRA, to third parties.

15. Equifax's principal place of business is 1550 Peach Tree Street, N.W., Atlanta, GA 30309.

16. Defendant Kross, Lieberman & Stone, Inc. is a collection agency incorporated in the State of North Carolina, with its principal place of business located at 991 Aviation Parkway Ste 300, Morrisville, NC 27560.

17. Defendant Credit Solutions Corporation. is a collection agency incorporated in the State of California, with its principal place of business located at 404 Camino del Rio Suite 400,

San Diego, CA 92108.

18. Defendant Wyndham Resort Development Corporation, d/b/a Worldmark By Wyndham, Inc. (Wyndham) is a corporation with its principal place of business located at 10750 W. Charleston Blvd. Las Vegas, Nevada 89135.

## FACTUAL ALLEGATIONS

19. In September 2017, Plaintiff entered into a contract to purchase a newly built home so that his young daughter could attend school in a specific school district which was highly rated.

20. At that time, the Plaintiff reviewed his credit report, and noted several fraudulent delinquent accounts on his credit report which the Plaintiff had never opened.

21. On or about October 24, 2017, the Plaintiff reached out to all three of the major consumer reporting agencies – including Equifax - and notified them of these fraudulent accounts.

22. Each of the three consumer reporting agencies – including Equifax - advised Plaintiff to file a police report, and send a cover letter describing the accounts. Plaintiff immediately did so.

23. After hearing no response from Equifax, Plaintiff reached out to Equifax to follow up.

24. At that time, Plaintiff was advised by Equifax's customer service representative to re-send these same documents, which Plaintiff immediately did.

25. After several more days of calling Equifax and demanding that these fraudulent accounts be blocked from Plaintiff's credit report, Plaintiff finally spoke with an Equifax customer service representative.

26. The Equifax customer service representative advised Plaintiff that Equifax's "policy" is to take any type of dispute request and change it to a traditional "30 day dispute", rather than treating identity theft disputes in the distinct manner required by the FCRA.

27. Plaintiff attempted to dispute these fraudulent accounts with Equifax several more times, each time advising Equifax that these accounts were not his and that they were the product of identity theft.

28. After each dispute, Equifax would simply respond back stating that they had 'verified' that these accounts were being accurately reported on the Plaintiff's credit report.

29. After each dispute, Equifax would inexplicably refuse to block the fraudulent information – on Plaintiff's credit report due to Identity Theft - within four days of receiving notice via an Identity Theft Report and Police Report that Plaintiff was the victim of identity theft, as required by the FCRA.

30. Instead, Equifax would merely respond that "We have reviewed your concerns, and are conclusions are: Please be advised that Equifax, at this time, will not block the information subject to the submitted Identity Theft and/or police report you provided as part of your dispute."

31. Defendants' violations of the FCRA caused the Plaintiff great distress, annoyance and frustration in his daily life. Defendants' actions have further harmed the Plaintiff by preventing him from obtaining the financing needed to purchase the home he desires and to obtain the credit he needs.

## COUNT I
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## INDIVIDUAL CLAIM AGAINST EQUIFAX

32. All preceding paragraphs are realleged.

33. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

34. The FCRA provides that if a CRA conducts an investigation of disputed information and

-6-

Case 3:18-cv-00436-MOC-DSC    Document 1    Filed 08/07/18    Page 6 of 15

confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

35. On multiple occasions in 2017 and 2018, Plaintiff initiated disputes with Equifax requesting that they correct and remove a number of specified accounts which were fraudulently opened by an individual other than the Plaintiff.

36. Equifax, having either conducting no investigation or failing to conduct a reasonable investigation, verified the inaccurate item on his credit file, even after Plaintiff submitted numerous documents establishing that he had never opened these accounts and that these accounts were opened as a result of identity theft.

37. As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA, Plaintiff has been harmed.

### COUNT II
### FAILURE TO ASSURE MAXIMUM POSSIBLE ACCURACY
### 15 U.S.C. § 1681e(b)
### INDIVIDUAL CLAIM AGAINST EQUIFAX

38. All preceding paragraphs are realleged.

39. Section 1681e(b) of the FCRA requires that, "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

40. Were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have removed these fraudulent accounts from the Plaintiff's credit report, especially after the Plaintiff (1) mailed numerous dispute letters to Equifax, and (2) provided Equifax with documents and information definitively

establishing that he was the victim of identity theft and that these accounts were not opened by him.

41. Furthermore, were Equifax to follow procedures to assure maximum possible accuracy of the credit report it prepares concerning Plaintiff, it would have prevented the erroneous information from being reported on the Plaintiff's credit report, especially after the Plaintiff provided Equifax with the information specifically requested by Equifax.

42. As a direct and proximate result of Equifax's willful and/or negligent failure to follow procedures to assure maximum possible accuracy of the information it reports, Plaintiff has been harmed.

## COUNT III
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 USC § 1681s-2(b)
### INDIVIDUAL CLAIM AGAINST KROSS, LIEBERMAN & STONE, INC.

43. All preceding paragraphs are re-alleged.

44. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

45. On multiple occasions, Plaintiff submitted a written dispute to the credit bureaus disputing the accuracy of the account being reported by Kross, Lieberman & Stone.

46. Kross, Lieberman & Stone received these disputes.

47. Kross, Lieberman & Stone was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

48. Kross, Lieberman & Stone failed to reasonably investigate Plaintiff's dispute.

49. Indeed, Kross, Lieberman & Stone's on-going failures to correct Plaintiff's account information is evidence that its investigation into Plaintiff's dispute was deficient.

50. Kross, Lieberman & Stone's conduct violated section 1681s-2(b) of the FCRA.

## COUNT IV
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 USC § 1681s-2(b)
### INDIVIDUAL CLAIM AGAINST CREDIT SOLUTIONS

51. All preceding paragraphs are re-alleged.

52. Furnishers of credit information have a duty under the FCRA to investigate disputes from consumers as to the accuracy of information being reported.

53. On multiple occasions, Plaintiff submitted a written dispute to the credit bureaus disputing the accuracy of the account being reported by Credit Solutions.

54. Credit Solutions received these disputes.

55. Credit Solutions was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

56. Credit Solutions failed to reasonably investigate Plaintiff's dispute.

57. Indeed, Credit Solutions' on-going failures to correct Plaintiff's account information is evidence that its investigation into Plaintiff's dispute was deficient.

58. Credit Solutions' conduct violated section 1681s-2(b) of the FCRA.

## COUNT V
### FAILURE TO INVESTIGATE DISPUTE
### FCRA, 15 USC § 1681s-2(b)
### INDIVIDUAL CLAIM AGAINST WYNDHAM.

59. All preceding paragraphs are re-alleged.

60. Furnishers of credit information have a duty under the FCRA to investigate disputes from

-9-

Case 3:18-cv-00436-MOC-DSC    Document 1    Filed 08/07/18    Page 9 of 15

consumers as to the accuracy of information being reported.

61. On multiple occasions, Plaintiff submitted a written dispute to the credit bureaus disputing the accuracy of the account being reported by Wyndham.

62. Wyndham received these disputes.

63. Wyndham was obligated, pursuant to section 1681s-2(b) of the FCRA to conduct a complete and thorough investigation with respect to Plaintiff's dispute.

64. Wyndham failed to reasonably investigate Plaintiff's dispute.

65. Indeed, Wyndham's on-going failures to correct Plaintiff's account information is evidence that its investigation into Plaintiff's dispute was deficient.

66. Wyndham's conduct violated section 1681s-2(b) of the FCRA.

## COUNT VI
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681c-2.

### INDIVIDUAL AND CLASS CLAIM AGAINST EQUIFAX

67. All preceding paragraphs are realleged.

68. Plaintiff brings Count VI of this action as a North Carolina class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter "FRCP"), on behalf of himself and all others similarly situated.

69. The Class (hereinafter, "Class") consists of: All natural persons residing in the State of North Carolina, beginning two years prior to the filing of this Complaint and continuing through the resolution of this action, to whom the Defendant sent a letter substantially similar to the Letter attached hereto as **Exhibit A** in response to a consumer's dispute of a credit item as the result of Identity Theft.

70. The Class period begins two years prior to the filing of this Action.

71. This Action is properly maintained as a class action. The Class satisfies all the requirements of Rule 23 of the FRCP for maintaining a class action:

   a) Upon information and belief, the Class is so numerous that joinder of all members is impracticable because Defendant handles hundreds if not thousands, of consumer disputes and investigations of public record information, and Defendant's uniform practice and procedure is to send form letters in response which misrepresent its investigation activities as it relates to disputes arising from public record reporting;

   b) There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. These common questions of law and fact include, without limitation:

   i. Whether the defendants violated various provisions of the FCRA including but not limited to 15 U.S.C. § 1681c-2.

   ii. Whether Plaintiff and the Class have been injured by the Defendants' conduct;

   iii. Whether Plaintiff and the Class have sustained damages and are entitled to restitution as a result of Defendants' wrongdoing and if so, what is the proper measure and appropriate statutory formula to be applied in determining such damages and restitution; and

   iv. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

c) Plaintiff's claims are typical of the Class, which all arise from the same operative facts and are based on the same legal theories.

d) Plaintiff has no interest adverse or antagonistic to the interest of the other members of the Class.

e) Plaintiff will fairly and adequately protect the interest of the Class and has retained competent attorneys to represent the Class.

f) A Class Action is superior to other methods for the fair and efficient adjudication of the claims herein asserted. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

g) A Class Action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein. Absent a Class Action, class members will continue to suffer losses of statutory protected rights as well as monetary damages. If Defendants' conduct is allowed to proceed without remedy they will continue to reap and retain the proceeds of their ill-gotten gains.

h) Defendants have acted on grounds generally applicable to the entire Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole

72. At all times pertinent hereto, Equifax was a "consumer reporting agency" ("CRA") as that term is defined by 15 U.S.C. § 1681a(c).

73. The FCRA provides that:

> Except as otherwise provided in this section, a consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of—
> (1) appropriate proof of the identity of the consumer;
> (2) a copy of an identity theft report;
> (3) the identification of such information by the consumer; and
> (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

*See* 15 U.S.C. § 1681c-2.

74. On multiple occasions in 2017 and 2018, Plaintiff initiated disputes with Equifax requesting that they correct and remove a number of specified accounts which were fraudulently opened by an individual other than the Plaintiff.

75. In support of these disputes, Plaintiff submitted all the required documentation, including proof of his identity, a Police Report and an Identity Theft Report.

76. Equifax refused to acknowledge that it had different obligations under such circumstances than those triggered by a standard dispute.

77. As such, instead of blocking the fraudulent information on the Plaintiff's credit report, Equifax inexplicably offered this response, which on the one hand (1) acknowledges the submission of a proper Identity Theft complaint, but on the other hand (2) refuses to do anything about it:

> "We have reviewed your concerns, and are conclusions are: Please be advised that Equifax, at this time, will not block the information subject to the submitted Identity Theft and/or police report you provided as part of your dispute."

78. The Plaintiff received this exact boilerplate response on at least five (5) separate occasions spanning several months, indicating the widespread use of such boilerplate refusals to comply

with the FCRA. *See,* Exhibit A.

79. As a direct and proximate result of Equifax's willful and/or negligent refusal to block this fraudulent information, as mandated by the FCRA, Plaintiff has been harmed.

## DEMAND FOR TRIAL BY JURY

80. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demand judgment against Defendants as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class representative, and Plaintiff's Counsel as Class Counsel;

B. Awarding Plaintiff and the Class actual damages;

C. Awarding Plaintiff and the Class statutory damages;

D. Awarding Plaintiff and the Class punitive damages;

E. Awarding Plaintiff the costs of this action and reasonable attorneys' fees and expenses;

F. Awarding pre-judgment interest and post-judgment interest;

G. A declaration that Defendants' conduct alleged herein is unlawful, as set forth more fully above;

H. Equitable relief, enjoining Defendant from engaging in the unjust and unlawful conduct alleged herein; and

I. Awarding Plaintiff such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Plaintiff,
DANA DAVIS, individually and on behalf
of all others similarly situated,
By counsel,

/s/ *Josef C. Culik*
Josef C. Culik (NC Bar No. 50365)
FAIRVIEW LAW
6000 Fairview Rd., Ste. 6000
Charlotte, NC 28210
(980) 999-3557
(980) 999-3537 (fax)
jc@fairview-law.com


Yitzchak Zelman, Esq.
MARCUS & ZELMAN, LLC
701 Cookman Avenue, Suite 300
Asbury Park, New Jersey 07712
(732) 695-3282 telephone
(732) 298-6256 facsimile
yzelman@MarcusZelman.com
*Attorney for Plaintiff*
**Pro Hac Vice Motion To Be Filed**

Dated: August 7, 2018